## STATE *v.* W. L. HEMINGWAY ET AL.

1. PRINCIPAL AND SURETY. *Indemnity. Public officer.*

A mortgage by a principal for indemnity of his sureties is valid, the liability of the sureties being a sufficient consideration; and the rule applies to a conveyance made by an officer (state treasurer) to indemnify the sureties on his official bond against loss by defalcations.

2. SAME. *Priority. Subsequent lien.*

And where the bond is for a less sum than the officer's indebtedness to the state, a conveyance given to indemnify his sureties will have precedence over a lien sought to be fixed on the mortgaged property by subsequent proceedings, instituted at the instance of the state to recover the general indebtedness of the officer.

3. SAME. *Mortgage. Delay. Contingent liability.*

And where, because of successive terms, there are several bonds with different sureties, in an attack by the state, having a debt not protected by the bond, it is no objection to such a mortgage, executed by the principal for indemnity of his sureties, that it contemplates delay in the disposition of the proceeds of the mortgaged property, in order that there may

Statement of the case.

be a fixing of liability as between the different sets of sureties; nor will the conveyance be defeated because of the contingency expressed therein that it is only to be made available in discharge of liability to *be* ascertained.

4. Mortgage. *Construction. Not an assignment.*

Such a conveyance, though embracing all the grantor's property, is not an *assignment*, subject to the strict rules governing such instruments, but a mortgage, enforceable upon the contingency of liability and dependent on future developments.

5. Mortgageor. *Retention of possession; when not fraudulent.*

In this case, the fact that such a mortgage embraced personalty (a part of which was consumable in the use), and that the trustee did not take exclusive possession immediately, but permitted the property to remain for some months with the mortgageor, who used the income and the proceeds of sale of some of it in preserving the rest pending inquiry as to the fact of his defalcation and the liability of the different sets of sureties, was held not sufficient to cause the transaction to be declared fraudulent in fact.

6. Chancery Practice. *Dismissal without prejudice; when improper.*

Where there are several defendants denying complainant's right to relief, and, after expiration of the time for taking testimony, the cause is set down, and a decree on the merits is made, as to some of the defendants no right to any relief whatever being shown, though the decree contains no express adjudication releasing them, it is error at a subsequent term, before entering a final decree, to allow complainant to dismiss the bill as to them without prejudice of the right to sue again. The cause having reached such a stage, it is too late to dismiss the bill as of course.

From the chancery court of the first district of Hinds county.

Hon. H. C. Conn, Chancellor.

W. L. Hemingway was treasurer of the state of Mississippi from January, 1878, until January, 1890. The bill in this case in behalf of the state was filed against him and the sureties on his last two official bonds, one of which was given in January, 1882, covering the term of four years following, the other given in January, 1886, for the succeeding term of four

years, each bond being in the penalty of $80,000. About the
time of the expiration of the last term, in January, 1890, it
was claimed that the said Hemingway, as treasurer, was largely
indebted to the state. This bill was filed October 15, 1890,
charging, in substance, that Hemingway, on going out of
office, in January, 1890, was indebted to the state in the sum
of $315,000 and upwards, and that it was uncertain which
bond was liable therefor. It was therefore sought to have
the different sets of sureties interplead, in order that the lia-
bility, as between them, might be determined. It is shown
that, on February 20, 1890, shortly after the announcement
of the alleged shortage on the part of the said W. L. Hem-
ingway, he executed a mortgage or deed of trust to one O. J.
Waite, as trustee, by which he conveyed to him in trust, all
his property, real and personal, in this state and elsewhere,
to be sold to indemnify and save harmless all of the sureties
on his official bonds, including the two above mentioned. The
bill charges that this deed was fraudulent, and, if not, that it
operated primarily as a security for the indebtedness due the
state by Hemingway, and not as indemnity to the sureties,
and that it should be enforced for the payment, as far as may
be, of the whole indebtedness due, leaving the state to pro-
ceed against the sureties individually for the balance due
after appropriating all the property conveyed.

In the trust-deed, which is made an exhibit to the bill, the
grantor recited that it was claimed that, on a final adjustment
of his accounts as treasurer, there would be a shortage; that
he had given divers bonds, and that he was desirous of in-
demnifying, as against loss, any and all the sureties on his
bonds. Therefore, in consideration of $10, he conveyed to
the trustee all of his property, real, personal and mixed.
The property was referred to as being situated in several
states, and a general description was given without specific
designation. After the granting clause, the deed contains the
following:

"But upon the following express trust and conditions, that

is to say: if it shall be found, *on such final adjustment* of my aforesaid accounts, that I shall not be found indebted, then this conveyance to be void, otherwise said trustee, or any one else in writing appointed by my sureties on such bonds, or their legal representatives, shall sell all my property hereinbefore described, or so much thereof as may be necessary, to the highest and best bidder for cash; . . . and out of the proceeds of such sale the trustee so selling shall pay, first, his own expenses and reasonable commissions in executing this trust, and then he shall pay in full, if he can, what I may be found indebted to the legal payee or payees thereof, and if any surety or sureties on any of the bonds hereinbefore referred to have made any lawful and proper payment on any such indebtedness of mine, such trustee shall prorate to such surety or sureties, according to the relation of such outlay to the demand of such payee, the object being to pay any liability of mine, and to save harmless any and all my sureties on any and all of said bonds, it being the true intent and meaning of this instrument to marshal the proceeds of the sales hereinbefore authorized for the adjustment *pro rata*, according to the amount which it may be found that I owe on the several funds intrusted to me as aforesaid, and for the like indemnity of any sureties of mine on any of my bonds."

In the bill it was claimed that this deed was void on its face. It was shown that part of the property conveyed consisted of cotton, corn, oats, etc., and the products of a dairy-farm embraced in the conveyance; that a large part of this property was perishable and consumable in the use, and yet the same was not delivered to the trustee at the time of the conveyance; that Hemingway was permitted to continue in possession and to use and enjoy the property and the income thereof for a number of months after the deed was executed; that he was permitted to dispose of part of the mortgaged property by conveyances to Nugent & McWillie and Calhoon & Green, attorneys, for his own purposes, but the trustee joined in the conveyances to these parties. The bill prayed

for a personal decree against Hemingway for the entire amount of his indebtedness to the state, and that the property embraced in said conveyance should be subjected to the satisfaction of this indebtedness. But, if the court should be of opinion that the conveyance was valid, then, and in that event, it was asked that it should be treated as a mortgage in favor of the state, and enforced accordingly.

Both sets of sureties, those on the bond given in 1882 and those on the bond of 1886, answered the bill, virtually admitting the default, but averring that it occurred entirely during the last term, and therefore that only the last bond was liable, wherefore the defendants denied the necessity for interpleader. They also denied the invalidity of the trust-deed, and all allegations of fraud were denied.

It was averred by the defendants that the conveyance of a part of the mortgaged property to Nugent & McWillie and Calhoon & Green was in consideration for their services as attorneys in protecting the interests of the sureties, who were the usees in the trust-deed; that these services were necessary for the protection of the trust-estate, and that the conveyances, which were made by Hemingway and joined in by Waite, the trustee, were by consent of the sureties. These conveyances were omitted from the agreed record, and all the facts as to this do not seem to be before the court on this appeal. As a part of the proof in the case, an agreement, signed by the respective solicitors, was filed, reciting as follows:

"It is admitted that all the property conveyed by William L. Hemingway in the assignment to O. J. Waite, trustee, exhibited in the papers in said cause, is not of value sufficient to satisfy the $80,000 bond last given as treasurer by said Hemingway to said state; and no proof need be made of this, nor of the consent of the sureties to the conveyance of land by O. J. Waite and W. L. Hemingway to Nugent & McWillie and Calhoon & Green; nor that the said Nugent & McWillie and Calhoon & Green rendered the services set up in their

answers—all of which matters are admitted as if duly proved.

"It is further admitted as a fact that, at the close of his last term, January, 1890, W. L. Hemingway, state treasurer, according to his books and accounts, upon settlement with the state, owed, and still owes, the sum of $315,619.20, according to his said books and accounts."

The proof tended to show that the defalcation occurred entirely during the last term, and it was proved that, in March, 1886, the treasurer's office was investigated by a legislative committee, and that all the money due was counted, and found to be on hand.

A part of the property embraced in the trust-deed consisted of a dairy-farm and the stock thereon. The trustee, Waite, lived about half a mile from the farm, and there was some testimony tending to show that, after the execution of the trust-deed, he exercised a general or partial supervision over the property, and that Hemingway, who was in actual control, acted as his representative; that for several months, pending inquiry as to the alleged deficit in the accounts of the treasurer, Hemingway had possession of all the property, and that he received and appropriated the income of the dairy-farm, and that he sold some articles of personal property, and received the proceeds. But there was testimony which tended to show that this was done in the preservation of the property; and, further, that, as it was not developed positively that there was a deficit, it was not believed that there was any occasion for the trustee to take immediate possession of the property, and sell the same under the provisions of the trust-deed.

Besides this dealing with the property during the delay of several months, pending investigation as to the treasurer's defalcation, there was no attempt to show fraud in fact as connected with the trust-deed. There was no evidence of any understanding or agreement, before or at the time of

executing the deed, that the grantor was to reserve any benefit or interest in the property conveyed.

After this bill was filed, on the 6th day of January, 1891, the state recovered a judgment against the defendant, Hemingway, and the sureties on his last bond, for $82,600, this being the amount of the penalty of the bond with interest. The record of the suit at law culminating in this judgment was introduced in evidence.

On March 14, 1891, the case having been set down for hearing on the pleadings and proofs, and having been fully heard, the court made a decree, holding that the trust-deed executed by Hemingway was not fraudulent in law or fact, and that it should be enforced by a sale of the mortgaged property, the proceeds to be applied in exoneration of the sureties. The property was ordered to be sold by Waite, as receiver, and the cause was continued, no express adjudication being made as to whether there was any liability on the bond executed in 1882.

At the October term, 1891, the case was, by consent, set down for final hearing. After it was called, but before being heard, the attorney-general and district attorney, solicitors for the state, moved the court to remand the cause to the docket, in order that they might, on behalf of the state, move to dismiss the bill, without prejudice, as to certain aspects. This application was based alone upon their statement that certain matters were improperly included in the bill. The application was granted, and thereupon the solicitors for the state made a motion to dismiss the bill, without prejudice, as to all matters save in so far as it was sought to have the trust-deed vacated for fraud. Thereupon, the court entered the following order: "Upon application of the state's solicitors, it is ordered that this cause be remanded to the rules, for the purpose of allowing complainant to dismiss parts of the bills of complaint. And, thereupon, said cause being remanded, upon application of complainant, it is ordered that so much of the original and amended bills herein

as seek to do more than set aside the trust-deed made by W. L. Hemingway to O. J. Waite, be, and the same is hereby, dismissed, without prejudice to the state, if so advised, to proceed at law."

To this action of the court, in allowing the bill to be dismissed in part, without prejudice, the defendants objected, and tendered a bill of exceptions, which was signed. The court then entered a final decree, carrying into effect the decree of March 14, 1891, from which the state appealed, and the defendants prosecuted a cross-appeal. The opinion contains a further statement of the case.

*T. M. Miller*, attorney-general, for the state.

1. Viewed in the light of what actually occurred, the transaction in which Hemingway attempted to dispose of his property was fraudulent and void. After executing the trust-deed, he remained in possession of the property, a portion of which was perishable and consumable in the use. He received and appropriated the income, and even sold a part of the property and never accounted for the proceeds. Waite never had actual control. All this was totally inconsistent with the terms and purposes of the conveyance. What is actually done with the property conveyed in a case like this will be conclusively presumed to have been intended before the conveyance. It is not shown here that the money received by Hemingway was used to preserve the property. The grantor assumed to keep and use the property for an indefinite time, namely, the period which would be necessary to investigate all of his accounts from the year 1878. All these circumstances must be held to characterize as fraudulent the original intent in executing the instrument. *Bank* v. *Douglass*, 11 Smed. & M. 469; 9 *Ib.*, 394; 13 *Ib.*, 79; *Stanton* v. *Green*, 34 Miss., 576.

Here a pretended security is put on record to keep creditors off, for the ostensible benefit of persons who may never pay any thing. If we are right in the position taken, that the transaction either was or became fraudulent in law or in

fact, then the trust-deed should have been declared void, and the property subjected to the payment of Hemingway's debt to the state, and a decree to that effect should be entered here.

2. Has a fraudulent debtor the right to protect his sureties, as against the liability they have incurred by reason of having placed him in a position where he could embezzle the funds of his principal? A party may indemnify his sureties in advance, but where the liability is already incurred, both by the principal and sureties, an arrangement, such as was attempted to be made here, must necessarily hinder and delay the principal creditor. The property is incumbered, not alone in favor of one set of sureties, but several, some of whom may never be made to pay any thing, and yet, by reason of this contingent and unascertained liability, all of the property was attempted to be tied up.

In New York it was declared, on grounds of public policy, that a public officer could not be allowed to interpose a security, in behalf of those bound with him as sureties, between the principal creditor and his property. *Currie v. Hart*, 2 Sandf. Ch., 353, cited in Burrill on Assignments, § 163.

Elsewhere it has been held that a principal debtor in default has the right to prefer his sureties, but the main question considered was, whether the sureties stand in the relation of creditors, never having paid any thing. Here there was no occasion for the assignee to hold back the money or keep property for an indefinite period. The state was entitled to have the transaction declared void, and a lien established on the property.

3. The cross-appeal is without merit. There was no abuse of discretion in dismissing the bill, as to some of its aspects, without prejudice. Here the sureties on the first bond complain that, because they came in and denied all ground for an interpleader, by alleging that the defalcation occurred during the last term, they are entitled to a decree discharging them from liability. Had they affirmed the jurisdiction by assent-

ing to the uncertainty, and asked a reference, their position would have been better.

But, aside from this, the court, of course, knew that it was impossible for counsel representing the state to make the very extended investigation that would be necessary to determine the liability of the sureties. It was proper to allow the bill, in effect, to be amended so as to withdraw from the controversy the question as to the liability of the sureties on the first bond. If, after full investigation, it shall appear that the defalcation was entirely during the last term, cross-appellants cannot be held. If the contrary shall appear, they should be made liable.

*Calhoon & Green,* for appellees and cross-appellants.

1. A surety is a creditor from the date of becoming surety. 49 Miss., 518; 52 *Ib.*, 556; Burrill on Assignments, § 113. And, as such, he may be preferred by his principal. In this case, Hemingway's term had expired, and the trust-deed was given to indemnify the sureties in the event that it should be ascertained that there was a liability, and it was valid. Burrill on Assignments, §§ 113, 114; *Dewey* v. *Littlejohn*, 2 Ired. Eq.

The statement in *Currie* v. *Hart*, 2 Sandf. Ch., 353, is *dictum*, in so far as it relates to the points in controversy here.

The statute directs that the property of the principal debtor shall be first taken in exoneration of sureties. Code 1880, § 1001. What could be done by law after judgment, should be allowed by the act of the debtor in advance. Under § 998 of the code, a surety may pay a judgment and take an assignment of it as indemnity.

Here there was no debt admitted to exist. The property was to be applied to save harmless the sureties against liability, if any should be ascertained. 26 Miss., 466; 31 *Ib.*, 701; 46 *Ib.*, 449; *Pool* v. *Doster*, 59 *Ib.*, 258.

The state, as creditor, may enforce the security for the pay-

ment of the debt secured, but not for any other debt. *Ross* v. *Wilson*, 7 Smed. & M., 753.

2. The trust-deed was not fraudulent. It was given to secure a mere contingent liability. It is not the case of an ordinary assignment. The delay would not vitiate the instrument; nor would the failure of the trustee to take immediate possession. See *Vaughn* v. *Powell*, 65 Miss., 401; *Holmes* v. *McGee*, 64 *Ib.*, 129; 13 Smed. & M., 83.

If by the course pursued in dealing with the property there was injury to the state, the fact would not vitiate the instrument, but was merely ground for the interference of the court in respect to the execution of the trust. *Richardson* v. *Marqueze*, 59 Miss., 81; 4 Smed. & M., 229; 8 *Ib.*, 483.

3. The liability of the sureties was involved by the pleadings, and, in effect, was adjudicated by the decree which was made March 14, 1891. This decree was made on the merits, after time for taking testimony had expired, and when the cause had been set down for hearing. It was therefore error for the court to allow the bill dismissed without prejudice to the right of the state to sue the sureties on the first bond, for this matter had become *res judicata*. 1 Daniel's Ch. Pr., 659, 793; Wells on *Res Judicata*, §§ 433, 434.

*Nugent & McWillie*, on the same side.

Clearly, the decree appealed from is in accordance with the statute. Code 1880, §§ 997–1002.

It is universally held that a surety is entitled to have the estate of the principal debtor, so far as applicable, first appropriated to the debt. 28 Gratt. (Va.), 815; 31 *Ib.*, 601; 82 Va., 65; 7 South. E. Rep., 531.

The decree is correct without reference to the statute, but the state asks the court to take a view of the conveyance that is contrary to the very terms of the statute. The statute entered into the obligation when the sureties signed the bond. Equity follows the law. 46 Miss., 449; 48 *Ib.*, 139; 59 *Ib.*, 258.

It was perfectly competent for the grantor by the trust-deed to secure from loss any and all the sureties on any and all of his several official bonds.

The conveyance was attacked for fraud, but that issue was absolutely not sustained at all, and, if it had been, the same results would follow. If the conveyance was void, the property of the principal debtor must invariably go to the extinguishment of the judgment, in exoneration of the sureties.

It is shown that the money in controversy was counted in March, 1886, and the full amount was on hand. This placed the liability solely on the last bond. The money being there, the state had no right to complain. And it was immaterial whether the money had been borrowed or placed in the treasury to meet the count. *Lauderdale County* v. *Alford*, 65 Miss., 63; 4 S. E. Rep., 721; 39 N. W. Rep., 71.

The bill was properly dismissed as to the sureties on the bond executed in 1882, though it should have been dismissed absolutely. These sureties were interested parties, and had the right to have the questions involved fully adjudicated. We think that the decree as it is effectually determines the questions in their favor. 1 Daniel, Ch. Pl. & Pr., 794, 795; 5 S. E. Rep., 97.

*J. B. Harris*, for cross-appellant, J. Z. George, one of the sureties.

No liability whatever was shown as against the sureties on the bond executed in January, 1882. Their liability was involved in the pleadings. The answer denied all liability on their part. Time for taking testimony had expired, and the cause was set down for hearing on pleadings and proof, and the decree at the March term was made, which, we insist, was an adjudication of the substantial rights of the parties. It was shown as a matter of fact that there was no liability on this bond, and that in the nature of things there could be none fixed, either in this suit or any other. This being so, it was error for the court at the next term to allow the bill dis-

missed without prejudice, against the consent of the sureties on that bond. They acquired rights in the adjudication. It was then too late to dismiss the bill as of course. 1 Daniel Ch. Pr., 790, 794 and note; 24 Ala., 712; 1 Keen, 247; 17 Beavan, 174; 36 How. (N. Y.), 240. And for a full discussion of the rule applicable in a case like this, we refer the court to *Railroad Co.* v. *Union Rolling Mill Co.,* 109 U. S., 702.

While, as a general rule, it is within the discretion of the court to allow a bill dismissed without prejudice under certain circumstances, this discretion must be a sound one, guided by law. 5 Am. & Eng. Enc. L., 681 and notes.

The bill was intended to settle the whole controversy. It was not simply a bill for interpleader. That was merely an incident to the final, complete, and just determination of the rights of the parties.

The policy of the law is to put an end to litigation. Here the sureties were charged with a heavy liability. After showing that they were not liable, and were entitled to a final decree, the bill was dismissed as to them in order that the state may sue them at any future time. There being no statute of limitations applicable to the state, this is a great hardship on these parties. The court had full jurisdiction, and the state had a fair trial, and we submit that it was error to allow the bill to be dismissed without prejudice as to them.

Argued orally by *T. A. McWillie,* for appellees, and by *J. B. Harris,* for cross-appellant, George.

CAMPBELL, C. J., delivered the opinion of the court.

An unbroken line of adjudged cases and text-books sustains the proposition that a mortgage for indemnity of sureties is valid, the liability of the surety being a sufficient consideration for such a mortgage; and such a conveyance will be held to have precedence of any subsequent lien on the property incumbered. This is the undoubted rule as between

individuals, and we are not aware of any distinction between the rights of parties to obligations to the state and others, and fail to perceive why a principal debtor to the state may not indemnify the sureties on his bond to the state in the same manner as if the obligation was to an individual. Indeed, there is greater reason for sustaining an indemnity by a principal of his sureties, as against the state, than in case of private persons, for the state takes no account of the property of its official. That is not looked to by the state. It makes no distinction between a millionaire and a pauper in this matter. The same bond is required of all incumbents alike, without regard to what they may possess, or what may be their character or habits. The prescribed bond is the security the state exacts in all cases alike. Individuals, in their dealings, may be largely influenced by the solvency and wealth of a principal debtor, and his character and business capacity and habits, and may be less exacting as to the sureties required because of the large property of the principal. Not so with the state, as already stated. If, then, it is the unquestioned right of the sureties of a principal debtor to a private creditor to receive indemnity, *a fortiori* should the right of sureties of a public debtor to have indemnity be recognized and upheld. The state did not look to the individual means of its officer, in approving the bond he gave for each term, as the condition of being qualified for the office, but the persons who became his sureties on the bonds may have been largely influenced to become such because of his possessions and prospects. Therefore, there was nothing in the situation to preclude the valid execution by Hemingway of a conveyance of his effects for the indemnity of the sureties on his several official bonds.

Nor do we think the conveyance he made was subject to legal exception because of the contingency expressed in it on which it was to be made available to the payment of ascertained liability in exoneration of the sureties. It is true that, being for the indemnity of sureties on several bonds, it nec-

essarily contemplated ascertainment of liability or non-liability, as to each of the bonds, before it could be known how to apply the property conveyed, but there is nothing in that to condemn the conveyance. The mere fact that delay may occur in settlement of rights growing out of a conveyance of property as security, is not a valid objection to it. The delay here contemplated is only that incident to legal proceedings necessary to adjust the rights of the several beneficiaries of the conveyance. The state has no right to complain of this delay as an objection to the conveyance by Hemingway, for, as we have seen, its security, prescribed by itself, was the bond, and the conveyance for indemnity being valid, created a lien entitled to precedence over any lien the state could acquire by judgment against Hemingway; and, besides, the conveyance being for the payment of his liability to the state in exoneration of his sureties, was enforceable by the state for that purpose, and has actually been so enforced by the decree made. On all of these grounds, we conclude that the conveyance was not invalid.

Nor do we find any ground to condemn it upon the facts attending and following its execution, all of which are explained in such manner as to uphold the conveyance. It is not an *assignment*, and subject to the strict rules in such cases, but a mortgage, enforceable on a contingency consisting of future developments; and the failure of the trustee to take complete and exclusive possession and control of the property immediately after the conveyance, and the dealing with the property for some months after, are not sufficient to cause it to be declared fraudulent in fact. We concur with the chancellor in upholding the conveyance.

It was error to allow the dismissal, against the objection of the defendants, of the bill, in the several matters wherein it was dismissed. The cause had reached a stage where it was too late to dismiss without the consent of the defendants. The bill sought to have the conveyance declared invalid, on several views of it, or, if held valid, to enforce it directly in

favor of the state, and to take possession of the property conveyed by it, and administer the trust, if valid, and, if invalid, to apply the property to satisfy a decree against Hemingway; and to compel an accounting with all the sureties on the two bonds, so as to fix liability where it might belong, and relieve the state from uncertainty as to this; and also to vacate some conveyances of land embraced in Hemingway's conveyance, which he and Waite had made since it was made.

Testimony had been taken in the cause, and a stipulation had been entered into between the solicitors on both sides as to certain matters of fact to be considered as proved, and certain letters and official reports were agreed to be received in evidence. Much of this agreed testimony relates to the inquiry on which bond liability is chargeable. The case had been heard by the chancellor, who, on the 14th of March, 1891, made a decree adjudicating that the conveyance is valid and enforceable in behalf of the state, but primarily for the exoneration of the sureties on the two bonds; that Hemingway was entitled to homestead exemption, and that sale should be made of the property embraced in the conveyance on certain terms (included in which was the consent of the attorney-general), and the net proceeds should be paid into the state treasury, with certain other matters relating to the administration of the trust-property not necessary to be mentioned. The attack made by the bill on the conveyance had failed. Its prayer to enforce the conveyance as a security for the state was granted.

The question where the liability, as between the two sets of sureties, should fall, was left open, with a reservation to the court of the right to do justice between them by final apportionment of the proceeds of the trust-property according to their rights upon adjustment of the respective liabilities. The decree made March 14, 1891, was based on, and could be justified only on the assumption of a final decree, ascertaining where among the sureties liability is. The requisite parties

were before the court; the trust-property was in its possession; a decree had been made adjudicating the chief matter of controversy, and directing payment of money into the state treasury; testimony by depositions and agreements had been taken and filed; the cause had been set for final hearing, after the expiration of the time allowed for taking testimony, and it was too late to dismiss the parts of the bill proposed and allowed. The defendants had acquired rights by what had occurred which entitled them to object successfully, at that stage of the suit, to a dismissal.

The decree already made in the cause, required, as its complement, a further decree on the very matters as to which the bill was dismissed, without which that decree could not stand. It had been made, and the defendants were interested in its maintenance. In such a condition of things, it is not allowable for the complainant to dismiss against the objection of the other parties. The cases to this effect are numerous— *Seymour* v. *Jerome*, Walker's Ch. (Mich.), 356; *Watt* v. *Crawford*, 11 Paige's Ch. (N. Y.), 470; *Cozzens* v. *Sisson*, 5 Rhode I. Rep., 489; *Bank* v. *Rose*, 1 Rich. Eq. (So. Ca.), 292; *C. & A. R. R. Co.* v. *Union R. M.*, 109 U. S., 702—which last case contains an extensive review of authorities on the subject, English and American. All seem to agree that, in the stage at which this case was when the dismissal occurred, it was not allowable to dismiss without the consent of all concerned.

After laborious investigation and protracted consideration, we have reached the conclusion that the dismissal of the bill should not have been allowed.

*We affirm the decree on the appeal of the state; but, on the cross-appeal, the decree dismissing parts of the bill is reversed, and the cause remanded for further proceedings in the chancery court, in accordance with the views expressed in this opinion.*