ANDREW J. MELTON ET AL. *v.* WILLIAMS COMPANY ET AL.

DEED OF TRUST. *Validity. Fraudulent conveyance. Creditors.*

 A deed of trust given to secure debts is not void on its face as to the grantors' other existing creditors:

 (*a*) Because it conveys land and all the rents, issues and profits thereof so long as any part of the debts sought to be secured by it remains unpaid; nor

 (*b*) Because it conveys specific live stock and all other live stock, not described, owned by the grantors, and such as they might thereafter acquire during the business relations between the grantors and the beneficiaries; nor

 (*c*) Because it secured notes due eight and nine months, respectively, after its execution and an open account due eleven months thereafter, and any further indebtedness, to fall due on demand, that might be incurred, and also any advances made by the beneficiaries to the grantors during the existence of their "business relations," such relations ceasing eleven months after the execution of the deed; nor

(d) Because it contained an agreement to ship to the beneficiaries all cotton grown or purchased by the grantors; nor

(e) Because it contained an agreement that payments made by the grantors should first be applied to any unsecured indebtedness, next to the balance on the open account and last to the notes.

APPEAL from the chancery court of Jefferson county.

· HON. WILLIAM P. S. VENTRESS, Chancellor.

The Williams Co., and others, appellees, were complainants, and Melton and others, appellants, defendants in the court below. From a decree in complainants' favor, adjudging a deed of trust to be void as to creditors, the defendants appealed to the supreme court.

The opinion states the case.

*J. A. Ramsay, J. McC. Martin,* and *W. C. Martin,* for appellants, cited the following cases and authorities:

*Witczinski* v. *Everman,* 51 Miss., 841; 1 Jones on Mortgages (4th ed.), secs. 364, 365; *N. O. Bank* v. *Le Breton,* 120 U. S., 765, 7 Sup. Ct., 772, 30 L. Ed., 821; Civ. Code La., art. 3292; *Wilson* v. *Vaughan,* 61 Miss., 473, 474; Jones on Mortgages (4th ed.), art. 152; Jones on Mortgages (4th ed.), art. 153; *Sillers* v. *Lester et al.,* 48 Miss., 513; *Cayce* v. *Stovall,* 50 Miss., 399, *et seq.; Everman* v. *Robb,* 52 Miss., 653, 24 Am. Rep., 682, *et seq.; Davis* v. *Marx,* 55 Miss., 377, *et seq.; Marx* v. *Davis,* 56 Miss., 747; *Newburger & Korg* v. *Perkins,* 62 Miss., 585; *Ogden* v. *Harrison,* 56 Miss., 744; *Chaffe* v. *Hughes,* 57 Miss., 258; *Cockle* v. *Flack,* 93 U. S., 344, 23 L. Ed., 949.

*H. C. Mounger, Hicks & Shelton* and *J. S. Logan,* for appellees, cited the following cases and authorities: 14 Am. Eng. Enc. Law (2d ed.), 244, 245, 246; *Wilzinski* v. *Everman,* 51 Miss., 846; *Cayce* v. *Stovall,* 50 Miss., 399; *Everman* v. *Robb,* 52 Miss., 653; *Marx* v. *Davis,* 56 Miss., 745; *Ogden* v. *Harrison,* 56 Miss., 744; *Chaffe* v. *Hughes,* 57 Miss., 258; *Wilson* v. *Vaughan,* 61 Miss., 472; *Newburger* v. *Perkins,* 62 Miss., 584; *Barkwell* v. *Swan,* 69 Miss., 907; *Cross* v. *Berry* (Ala.),

31 So., Rep., 36; *Kelly* v. *Reed,* 57 Miss., 89; *Cowden* v. *Lock-ridge,* 60 Miss., 385; *Williams* v. *Crook,* 63 Miss., 9; *Nichol-son* v. *Karpe,* 58 Miss., 34; *Henderson* v. *Downing,* 24 Miss., 116; *Farmers' Bank* v. *Douglas,* 11 Smed. & M., 541; *Arthur* v. *Commercial Bank,* 9 Smed. & M., 432; *Harmon* v. *Hopkins,* 56 Miss., 145.

Argued orally by *W. C. Martin,* for appellants, and *J. S. Hicks,* for appellees.

CALHOON, J., delivered the opinion of the court.

By agreement the only question for decision in the court below and in this court is whether the trust deed in the record is or is not "fraudulent and void, in law, on its face," as to the existing creditors; that is, in the language of the agreement, "as to creditors existing at this time." We shall examine the question as if the agreement meant creditors existing at the time the trust deed was executed. The investigation, on famil-iar principles, must begin with the assumption of validity, and with the duty, if the construction of the instrument be doubtful, to solve the doubt in favor of its integrity. Actual fraud is eliminated from this inquiry, and the only question to determine is whether, on its face, by construction of law, its effect would be to unduly hinder or delay or defraud cred-itors.

The instrument in question was executed April 4, 1901, by A. J. Melton and his wife, and acknowledged on the same day, and filed for record April 12th of the same year. It is a trust deed to E. S. Drake, trustee. to secure Stewart Bros. & Co., and their interest has been assigned. This instrument conveys to the trustee, in trust, certain lands, and we now direct atten-tion to the parts of the document pertinent to the issue in the case before us. After conveying the lands, their buildings and appurtenances, it then conveys to the trustee "all of the rents, issues, profits and crops thereof, or annually arising there-

from so long as there shall remain unpaid any balance on any of the indebtedness secured hereby." It then proceeds to convey "all cattle, horses and mules belonging to the said Meltons, or to either of them, being sixty mules, twenty-two horses, and forty head of cattle on the Jessamine place," and then conveys other mules and horses, describing the persons in whose possession they are, and, on this line, concludes as follows: "Also all other cattle, horses and mules belonging to us or to either of us not herein described. And also, all horses, cattle and mules which we may acquire hereafter during the continuation of our business relations with the said Stewart Bros. & Co., whether same be acquired by purchase, trading, natural increase or otherwise." This is all of the conveying part of the trust deed, but it then proceeds to show that the conveyance is to secure to the holder the prompt payment of two promissory notes, of even date with the deed, payable to the order of Stewart Bros. & Co., each note being for $7,500, one due December 1, 1901, and the other January 1, 1902 ; and it then proceeds to show, further, that the conveyance is to secure also to said Stewart Bros. & Co. "the prompt payment of any advances made by them to the grantors or either of them, during the year 1901, or during any subsequent year during the continuation of the business relations between the said parties, said advances to be made in money, plantation, farming or family supplies; said advances to be evidenced by an open account on the books of the said Stewart Bros. & Co., to fall due on the first day of March, 1902, or, if made after that date, to fall due on demand." It then provides that, on payment of the notes and the open account for advances, with the agreed 8 per centum interest, and on the due performance of all the other covenants in the deed, then the conveyance to be void, but, "in case we shall fail to pay said notes at maturity, or shall fail to pay said open account for advances when due with interest as aforesaid, or shall fail to do and perform any of the other covenants herein contained," then the trustee "is empowered to seize and sell said

property," etc., from the proceeds of which he is required to pay the costs and expenses, "and shall then pay said promissory notes, with accrued interest according to their tenor and effect, and said open account for advances with interest as provided, and any other sums secured hereby, and shall pay the remainder, if any, to us." Then come the covenants by which the grantors "covenant and agree" to ship the beneficiary all of the crops of cotton which shall be grown by them, or either of them, on any of the lands conveyed, and to ship "any and all crops of cotton which we or either of us may purchase or control, as well as all cotton which may be coming to us or to either of us from tenants or share hands on any of said lands, whether for rents, shares of crops or supply claims; all of said cotton to be shipped by us as soon as the same may be gathered and ginned." It then proceeds thus: "It is further understood and agreed that any payments which may be made by us or either of us, whether the same be in money, cotton or otherwise, shall be applied as follows: First, to the payment of any sum owing by us to the said Stewart Bros. & Co. which may not be secured hereby; second, to the payment of said open account for advances, with the interest as hereinbefore provided; and it is expressly understood and agreed that no payment shall be credited on the said two promissory notes until all other indebtedness by us to the said Stewart Bros. & Co. shall have been first duly paid and satisfied; and the said two notes and this instrument shall act as a continuing security for any balance which may be found to be owing by us, the said Meltons, to the said Stewart Bros. & Co., at the close of our business relations." It will be observed that the conveying part of the instrument, with description of the property conveyed to the trustee, is fully complete, and ended before any reference is made to what debts were to be secured, and that next appears the direction to the trustee to sell and apply proceeds to the notes and open account, "and any other sums secured hereby," and that finally appear the covenants by the gran-

tors to ship all cotton they might grow, or "purchase or control," and the provision for the application of payments to any unsecured debt, then to the advances, and finally to the notes; the instrument to be a "continuing security" for any balance owing "at the close of our business relations." The sequence of the provisions in the paper should be kept in mind. We now recur to the conveying part, in which we find nothing open to the condemnation of that line of cases denouncing the reservation of an interest in the grantor, and holding the whole instrument void where that appears; nor do we find any objection to the clauses conveying "all the rents, issues and profits of the lands, or annually arising therefrom, so long as there shall remain unpaid any balance on any of the indebtedness secured hereby." We do not find, from the authorities, that such a clause vitiates a trust deed. Neither do we see any fatal vice in the clause as to the cattle, horses, and mules. It conveys all the grantors had, describing where they were to be found, and, for fear some might be omitted, proceeds to convey all others not described, and then conveys all they might afterwards acquire. It does not appear that they had any not described, or that they afterwards acquired any, and, if they had, we think it would not make the deed fraudulent on its face; and we are considering a question of constructive, not actual, fraud. The words, twice appearing, "during the continuance of our business relations," do not vitiate this instrument. The paper was executed in April, 1901, and the notes secured fell due the following December and January, and the open account the following March, as appears in the deed; and it provides, as to the open account, that "if" any was made after March 1st it should "fall due on demand," which means when contracted. A fair construction is that dealings should end March 1, 1902, and, if any purchases occurred thereafter, they should be at once paid. As to the covenants to ship cotton to be grown or purchased, they clearly cannot affect the in-

tegrity of the conveyance, and the same is manifestly true of the agreement as to the application of payments.

As is said by Judge Campbell in *State* v. *Hemingway,* 69 Miss., 505, 10 So., 576, this "is not an assignment, and subject to the strict rules in such cases, but a mortgage enforceable on a contingency consisting of future developments." Here the conveyance is absolute, with no reservation of any interest in the grantors, and as in *Witczinski* v. *Everman,* 51 Miss., 841, "it gives on its face information as to the extent and purpose of the contract so that a purchaser or junior creditor may, by an inspection of the record, and by ordinary diligence and common prudence, ascertain the extent of the incumbrace." The inapplicability to this case of the authorities cited by appellees—*Arthur* v. *Commercial Bank,* 9 Smed. & M., 429, 48 Am. Dec., 719; *Farmers' Bank* v. *Douglass,* 11 Smedes & M., 469; *Henderson* v. *Downing,* 24 Miss., 113, and *Harman* v. *Hoskins,* 56 Miss., 144—will plainly appear upon slight examination, in the light of the reasons given by counsel for appellants, which we cannot improve upon. In support of our conclusions, we are content with the authorities cited in the briefs of counsel for appellants.

*Reversed, and decree here dismissing the bill, with costs of both courts taxed against appellees.*

TRULY, J., took no part in this case.