## NORTHERN ET AL. *v.* SCRUGGS.

[79 South. 227, Division B.]

1. EQUITY. *Voluntary dismissal. Orders in vacation. Correction.*
   Under Code 1906, section 519 (Hemingway's Code, section 276), making vacation orders of the clerk subject to review by the court, and section 1000, Code 1906 (Hemingway's Code, section 720) providing that each court shall have full control over all of the proceedings of the clerk had or taken "during the preceding vacation and may, for good cause shown, reinstate any cause discontinued during such vacation, etc., the question whether the dismissal of a bill on plaintiff's request during the last 1917 vacation was erroneous, was presented in time by exceptions at the January term of court in 1918.

2. EQUITY. *Orders in vacation. Correction. When proper.*
   When the purchaser at a sale under a trust deed, which was not made on the due notice required by Code 1906, section 2772, filed a bill in the prayer of which the husband of the deceased mortgagor joined, to resell the land, all the heirs acquired rights by the filing of the bill which would be affected by its dismissal, and in such case it was error to permit the purchaser to dismiss the bill in vacation.

3. INFANTS. *Protection of property. Duties of court.*
   It is the duty of the court to safeguard the interest of minor defendants, to make valuable elections for them, to redeem their property from liens or tax sale, and to see generally that their interests are fully protected.

4. INFANTS. *Protection of property. Duties of court.*
   When the purchaser at a sale under a trust deed not made on due notice as required by Code 1906, section 2772, filed a bill in the prayer of which the husband of the deceased mortgagor joined as heir to resell the lands, it was the duty of the chan-

118 Miss.—23

cellor, in the protection of the mortgagor's children, as minor heirs, properly to accept the offer of the bill to resell and to have the lands resold under the directions of the court.

5. SAME.

In such case it was not necessary to appoint a guardian *ad litem* for the minor heirs of the mortgagor though one might have been appointed.

6. ABATEMENT AND REVIVAL. *Death of defendant.*

Where the purchaser at a sale 'under a, trust deed not made on due notice as required by Code 1906, section 2772, filed a bill in the prayer of which the husband of the deceased mortgagor joined to resell the lands, and the husband died pending the proceeding leaving children of the deceased mortgagor surviving, the suit did not necessarily abate.

7. SAME.

In such case the cause need not be revived in the name of the executor or administrator of the deceased husband.

8. INFANT. *Laches. Effect.*

The apparent laches of minors should not operate to their prejudice.

APPEAL from the chancery court of Monroe county. Hon. A. J. McIntyre, Chancellor.

Bill by Mrs. J. H. Scruggs against H. A. Brazill and others. From an order of the chancellor sustaining an order of the clerk in vacation dismissing the bill, defendants, other than Brazil, appeal.

The facts are fully stated in the opinion of the court.

*W. H. Clifton,* for appellant.

The general rule as to the plaintiff's absolute right to take a nonsuit is "that he may dismiss his suit at any time before the jury retire to consider of its verdict;" which general rule has been made a statutory rule by section 802, Code 1906, and made applicable to all courts by section 687, Code 1906. Our courts said in the *Lucedale Case,* 74 So. 435, that this general rule was of equity origin.

But this abstract right is qualified when growing out of the pleading or proceedings in the case, the defendants have acquired any rights against the plaintiff, or is entitled to a decree or judgment, at the time the plaintiff moves for a nonsuit; and by the following additional qualifications that if the defendant has appeared by plea or answer in reconvention asking for affirmative relief, then while the plaintiff may dismiss his bill, this will not carry with it the defendants' cross-bill. *Adams* v. *Lucedale*, 74 'So. 435; Revised Code 1906, section 802-3, 687; *Canadian Mfg. Co.* v. *Fitzpatrick*, 71 Miss. 347, 41 So. 270, which cites approvingly cases cited in, *Chicago Ry. Co.* v. *Rolling Mill*, 109 U. S. 792, 27 L. Ed. 1085-6, 3 Sup. 594.

We quote excerpts announcing this qualification of the general rule from some of the English and American chancery cases cited by the United States supreme court, viz: *In re Coopers* v. *Lewis*, 2 Phil. Ch. 131.

"The plaintiff is allowed to dismiss his bill on the assumption that it leaves the defendant in the same position that he would have stood if the suit had not been instituted; it is not so when there has been a proceeding in the cause which has given the defendant a right against the plaintiff," *In Re Banks* v. *Rose*, 1 Rich. Eq. (S. C.) 234 it was said: "But whenever in the progress of the cause, the defendant entitles himself to a decree, either against a complainant or co-defendant, and the dismissal would put him to the expense or trouble of bringing a new suit, or making new proofs, such dismissal will not be permitted."

*In Re Conner* v. *Drake*, 1 Ohio St. 167, the court declared: "The propriety of permitting the complainant to dismiss his bill is a matter within the sound discretion of the court which discretion is to be exercised with reference to the rights of both parties, as

well the defendant as the complainant. After the
defendant has been put to the trouble of making his
defense, if in the progress of the case, rights have
been manifested that he is entitled to claim and which
are valuable to him, it would be unjust to deprive
him of them merely because the complainant might
come to the conclusion that it would be for his in-
terest to dismiss his bill. Such a mode of proceed-
ings would be trifling with the courts as well as
with the rights of the defendants. We think the
court did not err in refusing to permit complainant
to dismiss his bill."

This announcement of the first qualification of the
rule is better stated by Justice Cook in the *Lucedale
Case, supra:* "The only limitation of the rule is
applied to cases wherein the defendants have secured
some rights by the filing of the bill which would be
destroyed by the dismissal of the bill. Even then
it is not a matter of discretion with the chancellor,
it is the right of the defendants which control." Ar-
gument on proposition 1.

Now we insist that with this statement of the rule
of law governing in this case, that the averments of
the original bill itself establish all the material facts
necessary to give these infant defendants the right
to have a resale of their land, and an accounting.
That to permit the plaintiff in the teeth of her
pleading to withdraw her election to have a resale,
and set up title in herself in another suit, when
more than ten years have expired since the sale of
these infants' land, and when the death of their
father and other witnesses makes it impossible to
now obtain the testimony; and when the mortgagee
may have been in possession of the land long enough
to poll their rights of recovery, would work a great
injustice on these defendants; and as said by Jus-
tice Woods, 3 Su. Rep. 603, *supra,* "be trifling with
the administration of justice." The rights to a re-

sale and claim of title under the first sale grow out of the same transaction and are inconsistent with each other; and the original bill shows clearly that it was the intention of the complainants to raise the money by a resale and abandon all claims to the land. For she had procured a purchaser of the land, and asked for a resale by the chancery court in order to carry out that intention. Then complainant is estopped, in this suit to set up title to the land, by her own pleading. *Gaines* v. *Kennedy,* 53 Miss. 103; *Madden* v. *Railroad Co.,* 66 Miss. 258, 6 So. 181; *Warriner* v. *Fant,* 74 So. 822.

Even the title of land may be conveyed by estoppel, as where the defendant in his pleading admits the parole contract, or where he fails to deny the oral contract, and also fails to plead the statute. *Metcalf* v. *Brandon,* 38 M. B. P. 842. Again by the filing of the bill to foreclose the deed of trust in the chancery court there was a waiver of all right and title acquired under the foreclosure sale *in pais.* *Higgins* v. *Haberstraw,* 76 Miss. 627.

We insist that a court of chancery in the protection of its minor wards will see that the answer of their co-defendant, father and natural guardian, will inure to their benefit; and will be accepted as an assertion of these rights by the minors as well as the adult defendants. *Carradine* v. *Carradine,* 33 Miss. 698; *Straw* v. *Railroad Co.,* 73 Miss. 446; *Marks* v. *McElroy,* 67 Miss. 545, 7 So. 408.

But the chancery clerk attempted to dismiss the cause under the procedure provided by our statutes for acts in vacation which are interlocutory only and a cursory review of these statutes will show the dismissal order is void.

Code 1906, section 520, provides: "That the clerk shall enter at large, on the minute book, every order made by him in vacation as orders are entered in term time."

"And at the expiration of monthly rules, each month said clerk shall enter an adjourning order as to such rules, so as to distinguish acts done at rules, from other acts done in vacation."

Section 521: "How such minutes preserved and approved," provides: "the minute so kept shall constitute a record of the office and shall be carefully preserved, as such, free from erasure or alteration." *Page* v. *Superior Court Alamade Co.,* 18 Pac. 385 (Cal.); Revised Code 1906, section 510; *Acock* v. *Halsey,* 27 Pac. 193 (Cal.).

Again, section 525: "How proceedings before clerk to be conducted" provides: "In application and proceedings before the clerk in vacation, the same pleadings and evidence and form shall be observed, and the same process and service and return shall be necessary as though the proceedings were before the court."

We have not attempted to argue at length the contentions made in this brief but merely to state succinctly the facts and the rule of law applicable, for the reason that Chancellor Easterling has argued these points so ably and elaborately that any attempt on my part to add to his argument would have been a repetition.

For this error the case should be reversed and remanded.

*Lamar F. Easterling,* for appellant.

Could complainant in this stage of the proceedings dismiss her bill and withdraw her proposition which had been accepted—take back her prayer for relief which had become the prayer of the defendants.

At the time the complainant attempted the dismissal of the suit in vacation, either party thereto

was entitled to a decree granting the relief prayed for in the bill and joined in the answer.

Had the cause been set down at any time before the dismissal in vacation, could the court have rendered a decree granting the relief? Most certainly it could. It could have appointed a trustee and ordered the property sold, the debt paid and the balance distributed to the defendants in accordance with the prayer of the answer and of the original bill. The minors did not have to answer. The court could, in its discretion, have appointed a guardian *ad litem* for them and directed him to answer, but his answer would have been formal. The chancery court is the guardian of all minors. It is the duty of this court to make any order advantageous to minors: To see that their interests are safeguarded; to give them the benefit of any defense to which they might be entitled and to accept for them any proposal or agreement to their best interest.

Section 604, Code 1906 (Code sec. 364), reads in part as follows: "The court may appoint a guardian *ad litem* to any infant—but the appointment shall not be made except when the court shall consider it necessary for the protection of the interest of such defendant, and a decree and judgment of any court shall not be void or erroneous because of the failure to have a guardian *ad litem.*"

On the question of the duty of courts as to infants this court has said: "It is the duty of the chancellor to protect the interest of infants whether the proper defense be made or not, and for this purpose he should look to the record in all of its parts, and of his own motion give to the infant the benefit of all objections as fully as if specifically pleaded. An infant can waive none of his rights." *Price* v. *Crane,* 44 Miss. 571.

"The chancery court has full jurisdiction over minors and their property, which must be exercised

whenever nonaction would result prejudicially to the minor, and if there is no guardian, the court will act without one, where it can do so through a master or commissioner." *John* v. *Smith,* 56 Miss. 727.

In the last case cited, it was also held that the court would exercise an election for minors as to whether they would be allowed to redeem land sold for taxes or for enforcing an agreement to purchase.

"Nothing can be waived or admitted that would be to the prejudice of infant defendants. The court will apply to their benefit, whatever defense arises on the record, whether pleaded by their guardian *ad litem* or not." *Miller* v. *Palmer,* 55 Miss. 323. See also: *Neblett* v. *Neblett,* 70 Miss. 572, 12 So. 598; *Hood* v. *Bowman Freeman Chan.,* 290, *Jones* v. *Gurlie,* 61 Miss. 423.

The learned chancellor in the court below based his opinion upon the recent case of *Adams* v. *Lucedale Com. Co.,* 74 So. 435.

We submit that the Lucedale case supports the principle for which we contend. In that case after stating the case, this court through Cook, P. J., while stating the general rule recognizes the exception, which is as well settled, and based upon a sound reason, as the rule itself. In fact the exception in this as in other cases proves the rule. 74 So. 436.

If the offer of the complainant in her bill to have the property sold under order of the court so that any surplus or overplus could be distributed to the owners of the property, when accepted, conferred valuable rights upon the defendants capable of being enforced in that same proceeding, and after answer filed joining in the prayer, and asking at the hands of the court the same relief, can it be said that the defendants would not be prejudiced by allowing the complainant to retract her offer and escape unscathed. 16 L. R. A. 660; 46 L. R. A. 839; 96 L. R. A. 897; 10 R. C. L. 526, citing *Long* v. *Anderson,* 48 Fla.

279, 37 So. 216, 5 Ann. Cases 846 and note; *Franch* v. *Franch,* 8 Ohio 214, 31 Am. Dec. 441; *Chicago R. R. Co.* v. *Union Rolling Mills,* 109 U. S. 702, 27 U. S. (L. Ed.) 1081; *Miles* v. *Boyles,* 1913, Ann. Cases 1077-A (Vol. 26); *Axiom Min. Co.* v. *Little,* 6 S. D. 438, 61 N. W. 441; *Herring* v. *Abbe,* 18 L. R. A. (N. S.), 907, 46 So. 183; 46 L. R. A. 839 and exhaustive note thereunder; *Hemmingway* v. *State,* 69 Miss. 491, 10 So. 576; *Saymour* v. *Jerome,* Walk. Chan. 356; *Watt* v. *Crawford,* 11 Paige 470; *Cozzens* v. *Sissons,* 5 R. I. 489; *Bank* v. *Rose,* 1 Rich. Eq. 292; *Chicago & A. R. Co.* v. *Union Rolling Mill Co.,* 106 U. S. 702; *Conner* v. *Drake,* 1 Ohio St. 170.

Does the filing of the bill by Mrs. Scruggs and the proceedings thereon in 1908-9, confer upon appellants, defendants in said suit, valuable rights and benefits thereunder which cannot be destroyed and taken away by a voluntary dismissal of the suit? Do these rights and benefits operate to prevent a dismissal without the consent of appellants? *Horn* v. *Indianapolis,* 9 L. R. A. 676, 25 N. E. 558; 4 L. R. A. 205-147; 10 L. R. A. 91; *Murphey* v. *Hutchinson,* 93 Miss. 643, 48 So. 178; *Brown* v. *Franch,* 159 Ala. 645, 49 So. 255; *Wheeler* v. *Armstrong,* 164 Ala. 268, 51 So. 268; R. C. L. 698; 10 R. C. L. 699; *Hall* v. *Henderson,* 126 Ala. 449, 28 So. 531, 85 A. S. 353, 61 L. R. A. 621; *Mcleod* v. *Despain,* 46 Oreg. 536, 124 A. S. R. 1066, 19 L. R. A. (N. S.) 276; *Robertson* v. *Smith,* 15 L. R. A. 276; 18 L. R. A. 275; 10 R. C. L. 700; *Mark* v. *Kyatt,* 18 L. R. A. (N. S.) page 277; *Warriner* v. *Fant,* 74 So. 822; 205 U. S. 340, 51 L. Ed. 828; *Richardson* v. *Shephard,* 49 So. 251; *Knights of Pythias* v. *Quinn,* 78 Miss. 525, *Morgan* v. *Jacobs,* 90 Miss. 864; *Sielbeck* v. *Grothman,* 21 Ann. Cases 229; *Ortel* v. *Pierce,* 26 Ann. Cases 854, 116 Minn. 226; *Heaton* v. *Darling,* 66 Minn. 262, 68 N. W. 1037; *Wenzel* v. *Weigand,* 92 Minn. 152, 99 N. W. 633;

*American Mort. Co.* v. *Williams,* 145 S. W. 234 (Ark.); *Louisbury* v. *Norton,* 59 Conn. 170, 22 Atl. 153; *Williams* v. *Hoffman,* 39 Ind. App. 315, 76 N. E. 440; *Southard* v. *Pope,* 9 B. Mon. (Ky.) 261; *Deming* v. *Coming,* 11 N. H. 474; *Ott* v. *Rape,* 24 Wis. 336; *Smalley* v. *Hickock,* 12 Vt. 153; *Ott* v. *Rape,* 23 Wis. 336; 1 Am. Reports 186; 16 L. R. A. 660; 46 L. R. A. 839; 69 L. R. A. 897; *Higgins* v. *Haberstraw,* 76 Miss. 627; Clark on Contracts, p. 147.

We therefore, in conclusion, respectfully say that from reading of this record it is manifest that appellants have been denied their valuable rights and that the cause should be reversed and remanded with instructions to reinstate the answer and cross-bill so as to allow appellants to proceed therein with the prosecution of their cross-bill so as to obtain such relief as they may be entitled to thereunder; and if mistaken in this that the cause be reversed and remanded with instructions to the court below, to treat the answer and cross-bill as a new suit and an original bill and to require the defendant thereto, the appellee here, to answer the same.

*Paine & Paine,* for appellee.

Was there error committed by the chancellor in confirming the acts of the clerk in vacation in permitting the original bill of appellee to be dismissed and was there error in the chancellor striking from the files the so-called cross-bill and answer of the appellants filed after the original bill of complainants had been dismissed and the cost paid?

There was no error committed by the court because under the law of the state of Mississippi as announced by Judge Cook in *Adams, etc.* v. *Commercial Co.,* 113 Miss. 608, a complainant has the legal right to dismiss his bill at any time before

the cause has been submitted to the chancellor, sub-
ject to the limitation that if a defendant has secured
some right under the proceedings, which would be
destroyed by the dismissal of the bill, then it is
a discretionary matter with the chancellor.   As
said by Judge Cook in this same case supra:

"It seems that the right to dismiss without prej-
udice did not exist at common-law courts; it origi-
nated in the course of equity, and from our inves-
tigation it was right to be denied only when the
other party would be prejudiced."   *Pullman Palace
Car Co. v. Central Transportation,* 171 U. S. 138,
defines legal prejudice."

What rights of the appellants have been preju-
diced in the case at bar?   They had no rights prior
to the filing of the bill because the legal and equita-
ble title was in appellee under and by virtue of her
deed from the substituted trustee.   These appellants
had never filed an answer or cross-bill or taken any
steps or filed any papers or pleadings in the cause
asking for any relief or joining in the prayer of the
bill.   It is true that H. A Brazil, the father in 1909
filed an answer but he was merely a life tenant, and
at his death his rights, if he had any, died with him.
No decrees were ever entered in this cause nor
were any orders taken until in September, 1917, when
the bill was dismissed.   *Chicago & A. R. Co. v. Union
Mill Rolling Co.,* 109 U. S. 702.

The appellants before they can have this case re-
versed must convince this court that these appellants
acquired rights in this case before the bill was dis-
missed in vacation.   No defendant in a chancery
proceeding can acquire rights against a complain-
ant other than by filing an answer or cross-bill or
by a decree in the cause.   No defendant by inac-
tion, who fails to make an appearance by answer
or other appropriate proceedings, when no decree
has been entered in the cause, after the bill is dis-

missed, had the right under the statutes and laws of Mississippi, to come into court and claim that rights have arisen by the mere filing of the bill and by the answer of one defendant who had merely a life estate and who was dead at the time the bill was dismissed.

Counsel argue that the minute the bill was filed and the answer of H. A. Brazil was placed on record, without further decrees or proceedings or answers on the part of the appellants, that rights arose to the appellants which prevent the bill from being dismissed. Following out this argument counsel are driven to argue that if the appellee had dismissed her bill immediately after the answer of H. A. Brazil was filed, some nine or ten years ago, yet these appellants after this lapse of time could come into court, not by an original bill, but come into court and in this same case, which had been dismissed eight or nine years ago, file their answer and cross-bill. We think this statement is sufficient to show the court the fallacy of the argument of appellant's counsel.

In the case at bar, owing to the lapse of time and failure of appellee to prosecute this suit, the bill was stale and had been abandoned and could not have been proceeded on by her at this late date, and as a matter of law could have been dismissed on motion by appellants if appellee had attempted to proceed with the cause in 1917. See 10th R. C. L., sec. 313, page 528, *Pearson & Marye* v. *Nevitt,* 32 Miss. 180.

The appellee's brief filed by Chancellor Easterling is all founded on his argument based on this one essential and primary proposition; that is, that rights arose to these appellants alone by virtue of the filing of the bill and the answer by H. A. Brazil. That without further proceedings in the case on the part of the court or appellee and without the filing

of any pleadings by appellants, that rights arose to them which will prohibit the court from permitting the bill to be dismissed.

We respectfully submit that this is not the law of this state and never has been, and unless this main proposition of appellant is sustained, then all the elaborate brief and argument of counsel is worthless in the consideration of this cause. Under the facts and pleadings in the appeal, we don't think it is necessary to reply to the fifteen or more pages of Chancellor EASTERLING's brief on the doctrine of election. See 10 R. C. L., page 703, section 30.

Counsel for appellants in another part of their brief argue and insist that the act of the clerk in vacation in permitting the bill to be dismissed was interlocutory and that the chancellor was vested with discretion at the following term to set it aside, and should take into consideration all that had transpired since the bill was dismissed. Of course the chancellor has the right to set aside acts of the clerk in vacation, but we respectfully submit that in this kind of proceeding he must consider the rights of the appellant to dismiss her bill and determine her right to dismiss her bill by the facts and circumstances that existed at the time the bill was dismissed, and not those that have come into existence since the bill was dismissed. If the rule contended for by appellants were followed, then the legal rights of complainants to dismiss their bills would be emasculated; the statute plainly says the cause can be dismissed in vacation, and Judge COOK says this applies to the chancery court.

We submit that the appellee had the legal right under the statutes and laws of Mississippi to dismiss her bill at any time up until the appellants secured some rights by pleadings or by decrees or decretal orders; that the chancellor was not vested with dis-

cretion as to whether or not the bill should be dismissed until after rights had arisen to the appellants by their pleadings or decrees; that after these rights have arisen it then becomes a discretionary matter with the chancellor as to whether or not the bill will be dismissed.

As to the authorities cited by counsel which hold that complainants cannot dismiss their bills when rights have arisen to the defendants. If the court will examine these authorities they will find that in every case in which the petition to dismiss was denied complainant, the defendants had either answered, or filed cross-bills or there had been decrees entered which gave them rights. None of which existed in the case at bar when the bill was dismissed.

We will conclude our brief by once more calling the court's attention to the argument of both counsel for appellants and the third and fourth assignment of errors, wherein they mistakenly insist and assign as error the action of the court in "dismissing the cross-bill and answer," when as matter of fact the cross-bill and answer was not "dismissed" but merely striken from the files. And this of course makes a great difference; and in reading their briefs and argument we ask that this be borne in mind. The answer and cross-bill was never dismissed and hence there can be no prejudice to appellants from the mere striking the same from the files. If there is any merit in it they can file it as an original bill.

We respectfully ask the court to pardon us for the length of this brief, and insist that the case should be affirmed.

STEVENS, J., delivered the opinion of the court.

Appellee, Mrs. J. H. Scruggs, in December, 1908, filed her original bill of complaint in this cause against H. A. Brazill, Irene Brazill, Minta W. Brazill, Ethel

Brazill, and John P. Brazill, the husband and minor children of Mrs. Laura T. Brazill, now deceased. In her bill it is averred that H. A. Brazill and his wife, Laura T. Brazill, executed and delivered to C. R. Sykes, trustee, for the use and benefit of Mrs. G. A. Sykes, a deed of trust upon the three hundred and eighty acres of land, the property involved in this suit, to secure an indebtedness of two thousand five hundred dollars evidenced by promissory note due and payable December 1, 1903, with ten per cent. interest per annum from date; that the said deed of trust was duly filed for record; that on January 20, 1904, the said promissory note and deed of trust were for value transferred and assigned to the complainant; that the trustee named refused in writing to act as trustee; that under the provisions of the deed of trust complainant as assignee appointed in writing T. B. Gibson, substituted trustee, and had the written appointment filed for record; that thereafter the substituted trustee advertised the lands for sale for the required length of time and sold the same for cash to the highest and best bidder; and that the complainant became the purchaser thereof at trustee's sale and received the trustee's deed. It is then averred that under section 2772, Code of 1906, lands sold under mortages and deeds of trust must be advertised for three consecutive weeks preceding such sale in a newspaper published in the county; that at the time of said sale there was a newspaper published in Monroe county, but the sale was not made by publication in a newspaper, but written notices were posted in three public places in Monroe county; that the wife of the said H. A. Brazill owned the title to said land, but that she had died intestate, leaving her husband and other minor defendants as her legal heirs; that since the trustee's sale Gibson, the substituted trustee, had died; "that under the power given in the said deed of trust the assignee has no authority to appoint a trustee in the event the trustee died;" that complain-

ant has had an offer of purchase for said lands, but that the purchaser had contended that the sale should have been made in accordance with the statute, and for that reason refused to buy, and in order to satisfy said purchaser complainant "is willing for the land mentioned in the deed of trust to be resold, she, said Scruggs, agreeing to join in the deed, provided the sale will net her the amount of her debt and interest and cost up to the day of sale." The prayer of the bill is that the proper process be issued, and "that a trustee be appointed for the purpose of selling the lands under the deed of trust; that he be required to advertise the land for sale, in accordance with the provision of the law as it exists at this time; that he have all the power as given the original Scruggs trustee in said deed of trust," and for general relief. To this bill of complaint H. A. Brazill filed the following answer:

"Now comes defendant Henry A. Brazill, and for answer to so much and such parts of said bill of Mrs. J. H. Scruggs against him and his minor children filed in this cause, answering, says: That he admits all the allegations and charges contained in said bill to be true, and he joins in the prayer thereof, and asks that the same be granted."

It appears that process was duly served on the minor children of Laura T. Brazill and H. A. Brazill; that at that time these children were infants aged from seven to fourteen years, and were inmates of the Methodist Orphans' Home at Jackson, Miss. The bill of complaint was returnable to the January, 1909, term of the court. It appears that no guardian *ad litem* was appointed for the minors and no answer filed in their behalf further than the answer filed by the father, the natural guardian. If further appears that some time in 1909 H. A. Brazill, the father, died, and that no action was taken in reference to the present suit until the year 1917, when Irene Brazill reached her majority and had married Mr. Northern. She then

employed counsel to investigate the *status* of the property here involved, and to this end the solicitors employed attempted to locate the court papers filed in this cause but experienced some difficulty and delay in gaining an inspection of the file.  It appears that without access to the court file they prepared for the other defendants an answer and cross-bill and also a petition to have the lost papers substituted as required by law in such cases.  The file of papers was afterwards located, and counsel for the original complainant, a short period of time prior to the filing of the answer and cross-bill, went before the chancery clerk and paid the costs and had the clerk enter an order dismissing the bill.  At the January term, 1918, the defendants and cross-complainants filed exceptions to the action of the clerk in vacation dismissing the bill, while the law firm of Paine & Paine, as *amici curiae,* excepted to the action of the clerk in vacation in filing the proposed answer and cross-bill, and moved to strike the said answer and cross-bill from the files.  These motions came up for hearing before the chancellor in term time, and the chancellor, after full hearing, sustained the action of the clerk in dismissing the original bill, and the answer and cross-bill were striken from the files.  There was an application to the chancellor for an appeal to be granted to this court, and while the chancellor stated that the dismissal of the bill ended the suit, he expressly granted the appeal in this case, stating in his opinion that the point argued "is a very pretty question, a question I would like to see finally determined."  It appears that Mrs. Laura T. Brazill prior to her death executed a deed of conveyance for these lands to her husband, H. A. Brazill, for his life, with remainder over at his death to the four children, at that time minors.

A dismissal before the chancery clerk in vacation is not final until the act of the clerk is approved by the chancellor.  By statute (section 519, Code of 1906;

118 Miss.—24

section 276, Hemingway's Code) all orders and acts of the clerk in vacation or at rules are subject to the approval or disapproval of the court, "and shall not be final until approved by the court." By section 1000, Code of 1906 (section 720, Hemingway's Code), each court has full control over all of the proceedings of the clerk had or taken "during the preceding vacation, . . . and may, for good cause shown reinstate any cause discontinued during such vacation," etc. The question, then, as to whether the original bill should have been dismissed was a question properly before the court and timely presented.

Without attempting to lay down a hard and fast rule governing the right of a complainant to dismiss an original bill in equity, we are led to the conclusion, by the facts and circumstances of the present suit the learned chancellor erred in dismissing both the original bill and the answer and cross-bill. The present litigation was initiated by the alleged beneficiary of the deed of trust and the purchaser of the lands at foreclosure sale. For reasons stated in her bill, she offered to relinquish her title acquiring at foreclosure, to treat herself as a mortagee in possession, and to have the court resell the lands at judicial sale, offering to accept the secured indebtedness and to join the court's trustee or commissioner in executing a deed to any purchaser at judicial sale in the event the lands brought at the resale a sum in excess of the debt secured by the instrument. In other words, the complainant offered to relinquish her claim to the lands and to accept payment for her debt. There is a claim that these lands are worth a sum of money largely in excess of the indebtedness; that appellee has been able to lease the lands for a handsome rental, and that cross-complainants possess valuable and equitable rights in the subject-matter of this litigation. When the original bill was filed offering to do equity, the father, H. A. Brazill, the only adult defendant at that time, properly appeared

and by his answer admitted the allegations of the bill, accepted the offer of the complainant, and joined in the prayer of the original bill. He was the only adult defendant authorized by law to appear in his own behalf and accept the issue tendered. In accepting the offer he made the prayer of the bill his prayer, and so far as he was concerned the cause was then ready to be set down on bill and answer. He was the father and natural guardian of the infant defendants. It is true that his answer did not purport to be an answer for his children. But the relationship, we think, should not be overlooked.

Under prior decisions of our court and under well-recognized procedure in equity, it is the duty of the court to safeguard the interests of minor defendants, to make valuable elections for them, to redeem their property from liens or tax sales, and to see generally, that their interests are fully protected.

On this point the announcements of our court in *Price* v. *Crone,* 44 Miss. 571, *Johns* v. *Smith,* 56 Miss. 727, and *Miller* v. *Palmer,* 55 Miss. 323, are pertinent and strong. Many other authorities might be added. With these reflections of our court in mind, it became the duty of the chancellor in this case, whenever the matter was brought to his attention, promply to accept the offer of the original bill and have the lands resold under the directions of the court. The minors had all to gain and nothing to lose by this proceeding. Under the state of the pleadings it was not even necessary for a quardian *ad litem* to be appointed, but, if the court thought proper, it was the duty of the chancellor to appoint a guardian *ad litem.* But neither the complainant, it seems, nor any one else, brought the matter to the attention of the chancellor until the application to dismiss the original bill came up for hearing. In the meantime Brazill, the adult defendant, had died, and his interest in the lands thereby terminated. His death did not necessarily abate the suit. He no longer

had any interest in the lands, and there was no occasion to bring in his administrator or executor. The cause was ready at any time to be set down for final hearing and for a final decree to be rendered. It is intimated by counsel that appellee had a misconception of section 2772, Code of 1906, that this statute was enacted after the execution and delivery of the present deed of trust and that the complainant in her original bill had a misconception of the law. We do not believe that the reason offered is here controlling. It is stated in the original bill that the present assignee of the deed of trust had no authority to appoint a substitute trustee, and that the purchaser from appellee was unwilling to accept title. These are important facts tending to show that the foreclosure was invalid, and, if so, the infant defendants had a cause of action and rights that should be inquired into and protected. Under this view any dismissal of the original bill falls within the limitation stated in the opinion of this court in *Adams* v. *Lucedale Commercial C.,* 113 Miss. 608, 74 So. 435 when the court by COOK, P. J., said:

"The only limitation of the rule is applied to cases wherein the defendant has secured some right by the filing of the bill which would be destroyed by the dismissal of the bill."

Or as stated by CAMPBELL C. J., in *State* v. *Hemingway,* 69 Miss. 491, 10 So. 576:

"The cause had reached a stage where it was too late to dismiss without the consent of the defendants. . . . The defendants had acquired rights by what had occurred which entitled them to object successfully, at that stage of the suit, to a dismissal."

As stated by the Lord CHANCELLOR in *Cooper* v. *Lewis,* 2 Phill. Chan. 181:

"The plaintiff is allowed to dismiss his bill on the assumption that it leaves the defendant in the same position in which he would have stood if the suit had

not been instituted; it is not so where there has been a proceeding in the cause which has given the defendant a right against the plaintiff."

Mr. Daniell (5th Ed. p. 755) says: "Where, however, there has been any proceeding in the cause which has given the defendant a right against the plaintiff, the plaintiff cannot dismiss his bill as of course; thus, where a general demurrer had been overruled on argument, Lord Cottenham was of opinion that the plaintiff could not dismiss his bill as of course, the defendant having a right to appeal against the order overruling the demurrer, which right he ought not to be deprived of on an *ex parte* application."

The authorities referred to in the opinion of this court in *State* v. *Hemingway, supra,* are more or less pertinent. The case of *Pullman Palace Car Co.* v. *Central Transportation Co.,* 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108, cited by counsel for appellee, when properly understood, supports the views now expressed. The court, among other things, makes the following observation that is quite applicable to the present suit:

"The denial of the motion was made in connection with the application of the Central Company to file a cross-bill in which it would seek to avail itself of the tenders made by the Pullman Company in the original bill. Such an application for leave to file a cross-bill seeking affirmative relief, while at the same time availing itself of those tenders of relief made by the original complainants, would furnish additional ground for the exercise of the discretion of the court in refusing to grant the application for leave to discontinue."

See also, *Stevens* v. *Railroads* (C. C.), 4 Fed. 97; 16 Cyc. 460, and cases there listed in the footnotes; *McCarren* v. *Coogan,* 50 N. J. Eq. 268, 24 Atl. 1033.

It is insisted by counsel for appellee that this was a stale case at the time it was dismissed, and for that reason the dismissal was proper. The circum-

stances however, show that no action was taken by the defendants because of the death of the father, H. A. Brazill, and the minority of the other defendants. The apparent laches of minors should not operate to their prejudice.

Nothing herein said is intended as an adjudication on the merits of the case. Our view is that the cause should have been retained, the defendants permitted to file their proper pleading, and a final decree ultimately entered in accordance with the rights of all parties. To permit the complainant to stand by and take no action toward the prosecution of this cause, to remain in possession of the premises, and by her bill possibly to lead Mr. Brazill in his lifetime to take no action looking toward the protection of the minor's interest, would be unfair to the interests of helpless and innocent children. The decree of the learned chancery court dismissing the original bill and striking from the files the answer and cross-bill will be reversed, the original bill, answer, and cross-bill will be reinstated, and the cause remanded, with leave to either party under the directions of the chancellor to amend generally the pleadings as they may now deem proper.

*Reversed and remanded.*