457 So.2d 1344 (1984)
Jerry Preston REDMOND
v.
STATE of Mississippi.
No. 55091.
Supreme Court of Mississippi.
October 17, 1984.
V.T. Vallas, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
WALKER, Presiding Justice, for the Court:
This is an appeal from the Circuit Court of the First Judicial District of Hinds County, Mississippi, wherein appellant was convicted of burglary and larceny of a dwelling and sentenced to a term of ten years in the custody of the Mississippi Department of Corrections to run consecutively to the sentence in Cause 893 of that court. Being unhappy with the judgment and sentence, Redmond has perfected an appeal to this Court.
On August 9, 1982, Mrs. JoAnn Taylor, upon arriving at her residence on Pecan Boulevard in Jackson between 5:00 and 6:00 p.m., discovered the home had been burglarized. The front door was open and the facing knocked off the wall surrounding the backdoor. The police were already on the scene and it was determined two portable televisions had been taken.
Earlier that afternoon Larry Esco and his sister were driving down Pecan Boulevard when they noticed what appeared to them to be a burglary taking place. Mr. Esco saw a black male wearing a "little ole hat" leaving Mrs. Taylor's house and carrying two televisions. The man left the front door of the home open and placed one television in the trunk of a black Lincoln occupied by a second black male and placed the second television on the rear seat of the car. As it was raining, neither Esco nor his sister were able to clearly identify the suspect's face; however, they did obtain the license number of the suspect's car. Esco reported his observations to the police department.
That afternoon Officer William Gladney and his partner, Steve Renfrow, patrolmen *1345 with the Jackson Police Department, observed a car matching the description given by Esco parked outside Apartment B-2 of the Wood Village Apartments. A television was seen on the backseat of the car.
Gladney knocked on the door of Apartment B-2 and identified himself to the woman answering. He heard a lot of rumbling inside the house and what he thought sounded like a screen being knocked out of a window. Behind the apartments, Redmond, the appellant, was found hiding beneath some underbrush, a green baseball cap lying beside him. Dennis Robinson was found standing with one hand on a window sill of an open window and one foot partially off the floor. The window screen had been knocked out on the ground.
An inventory was done of the car outside of Apartment B-2 after Robinson and Redmond were placed under arrest. A television was located on the rear seat of the car as well as one found in the car's trunk. Both televisions were later identified by Mrs. Taylor as those taken from her home.
Walter Sims, a nephew of Robinson, testified he was with Redmond on August 9, riding in his uncle's dark blue Lincoln. Redmond asked Sims to stop the car on Pecan Boulevard at what he was said was his mother's house. Redmond told Sims to wait in the car. Sims observed Redmond go to the side door of the home and knock. He later observed Redmond coming out of the front door with a television and stereo (Sims later testified Redmond had two televisions) leaving the front door open. After placing one television in the trunk and one on the rear seat, Redmond advised Sims to return to his uncle's. When the police arrived at Robinson's apartment, Redmond went out the window and Sims hid in the attic. He later turned himself into the police and told them his version of what had occurred on Pecan Boulevard.
Redmond, testifying in his own behalf, admitted being with Sims on Pecan Boulevard, but related the story that Sims entered the house and brought out the televisions. He assisted Sims in putting them into the car and both went to Robinson's apartment. Redmond was a drug user and had taken some pills prior to the incident. He never questioned Sims about the televisions as he was affected by the drugs and described his thinking at that point as "too  too good ..." He ran from the police at Robinson's apartment because he had not seen his probation officer in approximately three months.
Detective Joe Wade with the burglary division of the Jackson Police Department questioned Redmond on two separate occasions. The first questioning took place the morning of August 10 in the interrogation room at police headquarters. Detective Conston was also present. Redmond was advised of his rights. Redmond stated that Dennis Robinson was not involved in the case. When questioned as to his own involvement, Redmond stated that he did not want to answer any other questions. He was then returned to the city jail.
The second interrogation occurred later that afternoon at approximately 3:30 to 4:00 p.m. Wade was at the city jail on other business when Redmond called to him and said he wanted to talk. Wade was near the front of the jail near the exit and Redmond was in the doorway near the drunk tank. Wade and Redmond went to a small conference area used by attorneys. Redmond stated that he wanted to tell what had happened and to tell the truth and get things straight. He was again advised of his rights after which he informed Officer Wade he did break into the house and got two televisions and then proceeded to the Wood Village Apartments. Wade stated that no threats or promises were made to Redmond in order to get this information.
According to Redmond, on the afternoon of August 10, Conston and Wade took him from his jail cell unwillingly and transported him to the interrogation room. He told them he did not want to talk. Redmond said that the police informed him that if he would "cop out to this burglary", they would drop two other forgery charges against him and let him serve six months on the county farm. "I just told them that *1346 if they would get the charges dropped, I would accept it." He testified that he was feeling bad as he was undergoing withdrawal from the drugs and would have asked more questions if his head had been clearer. He denied taking the televisions or having any knowledge of the burglary being committed. Redmond had a prior conviction of receiving stolen property.
Following trial by jury, the appellant was found guilty as charged.

I.

THE COURT ERRED IN ALLOWING TESTIMONY BY DETECTIVES THAT APPELLANT HAD CONFESSED.
Although appellant contends he did not confess, he also asserts any statements made by him were not made voluntarily. He contends the voluntariness of his statements was affected by:
(1) the officers who questioned him were wearing guns;
(2) at the time he had a serious drug problem and was suffering withdrawal symptons; and
(3) he was offered six months on the county farm in exchange for his statements.
First, during the court's hearing on a motion to suppress, Officer Wade, who was with appellant at the time of the confession, testified that he was not armed as it was against policy to take a weapon inside the city jail. Secondly, Officer Conston testified that in the morning when he was involved in the interrogation Redmond did not appear to be nervous. Officer Wade stated that Redmond was shaky to some extent but that he did not know of his involvement with drugs. The appellant himself testified that he was aware of what was going on around him, he understood what the detectives were telling him, and he also understood that he did have the right to have an attorney present. Third, Officer Wade, who was with the appellant, denied any offers, threats or promises were made to the defendant in exchange for his statements.
The voluntariness of a confession and its admissibility into evidence is a question of law for the trial judge to determine. Ratliff v. State, 317 So.2d 403 (Miss. 1975). The court determined appellant's statements were voluntarily given.
Once the determination of voluntariness is made, the question as to whether or not the confession had in fact been given is a question for the jury, if put in issue by the defendant. See Caldwell v. State, 443 So.2d 806 (Miss. 1983).

II.

THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
The appellant cites no authority in support of his argument but merely reiterates his contention that without the detective's testimony concerning the alleged confession, the State's case would be greatly weakened and would have presented to the jury a more fair and accurate representation of the facts. Where no authority in support of alleged error is cited, this Court is under no obligation to consider the same on appeal. Smith v. State, 430 So.2d 406 (Miss. 1983); Gandy v. State, 373 So.2d 1042 (Miss. 1979).
As noted earlier the testimony offered by Walter Sims and the appellant was conflicting as to what actually transpired at Mrs. Taylor's house on Pecan Boulevard on August 9. Also, the evidence was conflicting as to whether or not a confession had been made.
We have often stated that the jury is the sole judge of the credibility of the witnesses and the weight and worth to be given their testimony. Campbell v. State, 278 So.2d 420 (Miss. 1973); Carter v. State, 310 So.2d 271 (Miss. 1975). The jury resolved the conflicts in this case against appellant. After our careful review of the record, we find the evidence sufficient to *1347 support his conviction and thereby affirm the judgment of the trial court.
AFFIRMED.
ROY NOBLE LEE, P.J., BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.