551 So.2d 897 (1989)
FLUOR CORPORATION
v.
Bonnie B. COOK, Individually & as Admrx. of the Est. of Willie W. Cook, Deceased and Royal Ins. Co. of America and Amerada Hess Corporation.
No. 07-58656.
Supreme Court of Mississippi.
October 18, 1989.
*898 Lawrence C. Gunn, Jr., Hattiesburg, for appellant.
Lee N. Perry, White & Morse, Gulfport, John E. Milner, Brunini Firm, Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Circuit Court of Lamar County, Mississippi, Honorable Michael R. Eubanks, presiding. Bonnie Cook, appellee, is the widow and administratrix of the estate of Willie G. Cook, who died as a result of injuries received when a pipe in the Amerada Hess Refinery near Purvis froze, burst, leaked gas and caught fire resulting in an explosion. This unfortunate accident happened on December 26, 1983.
Appellant, defendant below, was Fluor Corporation, who designed and built the refinery in the 1950's and several other refinery service and contracting companies. None of the other defendants below are parties to this appeal, even though they were all dismissed by separate order for different reasons.
There were two personal injury cases, Smith and Hall, filed approximately the same time as the case at bar, but they were consolidated and assigned to a different judge. In that consolidated case Fluor was granted summary judgment, one defendant settled, and the others were either dismissed by directed verdict at trial or by jury verdict for the defendants. No appeals were taken in Smith and Hall except for the appeals against Fluor, which this Supreme Court affirmed in Fluor's favor. Smith v. Fluor Corp., 514 So.2d 1227, 1232 (Miss. 1987)
In the case at bar, Fluor attempted to have the case dismissed in a written amended motion for summary judgment. After a full hearing and presentation of memoranda in support of each party's position, the learned circuit judge denied Fluor's motion. Approximately six months later, Fluor and other defendants moved the lower court to exclude testimony of untimely disclosed experts. The court found that the motion of the defendants to exclude the testimony should be granted as to Harry W. McAninch and denied as to Robert W. McLeod. Thereafter, thinking its position prejudiced as a result of losing the use of Harry W. McAninch's expert testimony, plaintiff/appellee moved the lower court to non-suit the case under Rule 41(a)(2) of Mississippi Rules of Civil Procedure. The trial judge granted plaintiff's motion of dismissal as to Fluor Corp. without prejudice on August 17, 1987. It is from this final judgment that Fluor Corp. has perfected its appeal and assigns as error:
1. The lower court erred in failing to grant Fluor Corporation's motion for summary judgment on either of the following theories:
(a) It is unconstitutional to allow wrongful death plaintiffs a better statute of limitations from that applied to personal injury plaintiffs under § 15-1-41, Miss. Code Ann.;
(b) Because plaintiff's cause of action expired in 1968, the 1972 amendment to § 15-1-41 could not revive the plaintiff's cause of action for wrongful death.
2. The lower court erred in failing to dismiss this suit with prejudice, rather than without prejudice, due to the plaintiff's failure to timely answer interrogatories.
The facts of how this accident occurred are clearly set forth in Smith, supra, at 1228, 1229. However, for the sake of convenience and understanding, the pertinent text is abstracted hereafter.
Fluor Corporation built the Black Creek refinery for Pontiac Eastern Corporation in the late 1950s, and Pontiac Eastern accepted the plant prior to February 18, 1958. In *899 1971, Amerada Hess purchased the plant from Pontiac Eastern.
Fluor Corporation has not been back on the premises since 1958, nor has it had anything to do with the refinery. Fluor has never given any advice in the operation, modification and maintenance of the refinery since delivering it to Pontiac Eastern Corporation in 1958. In 1964, Pontiac Eastern modified the 6E-10 heat exchanger by increasing its capacity by fifty percent (50%) adding a third set of fin tubes and lengthening the inlet header. The inlet header is the section of pipe which burst.
The record in Smith, supra, indicates how that portion of the refinery operates where the explosion occurred. A hydrocarbon stream flows through a 6-inch pipe into the 6E-10 heat generator, which is a metal cylindrical vessel approximately 22 feet long. Hydrocarbon flows through a number of small tubes inserted lengthwise through the vessel and then into another portion of the plant known as the deisobutanizer tower (DIB). At the point where the hydrocarbon enters the heat exchanger, there is a large 6-inch pipe known as the inlet manifold. A valve is situated in the pipe before the gas stream enters the inlet manifold so that the flow of gas to the heat exchanger can be cut off. If a fissure occurs, the operator should open a bypass valve above the heat exchanger to allow the gas to flow around the heat exchanger and directly to the DIB. On the outlet side of the heat exchanger is another valve, the outlet valve, which likewise should be closed if the unit is bypassed in order that the heat exchanger would be closed at both ends and gas would not back up into the heat exchanger while it is bypassed.
As stated, Pontiac Eastern enlarged the capacity of the heat exchanger by adding an additional set of tubes in 1964, seven (7) years before Hess bought the refinery. The inlet manifold had to be lengthened and a new section of 6-inch pipe was welded into the end of it. Also, a drain valve was added at the end to drain water which might condense from the refining process and collect in the inlet manifold.
At the time of the accident in question, the 6E-10 heat exchanger had been bypassed. Hess had not used it for several years, and gas was flowing directly from previous parts of the refinery straight into the DIB without going through the heat exchanger. The inlet valve was closed so the gas could not enter the heat exchanger, but the bypass valve was open.
The outlet valve to the heat exchanger also was left open. The process superintendent for Hess admitted that it should have been closed. The outlet valve having been left open, it allowed hydrocarbons to pass into the pre-heater, though they were not being circulated as part of the normal gas flow. This allowed water vapor in the gas stream to condense and collect in the lowest portion of the pre-heater, which was the inlet manifold. During abnormally cold weather in December, 1983, water collected in the manifold, was not drained, and froze, bursting the pipe. When it thawed on December 26, a cloud of hydrocarbons escaped and was ignited, causing the explosion resulting in Willie W. Cook's death.

ISSUE # 1

IS IT UNCONSTITUTIONAL TO ALLOW WRONGFUL DEATH PLAINTIFFS A BETTER STATUTE OF LIMITATIONS FROM THAT APPLIED TO PERSONAL INJURY PLAINTIFFS UNDER § 15-1-41?
This question presents an area of our law which this Supreme Court has recently decided. The simple answer is, no. Anderson v. Fred Wagner and Roy Anderson, Jr., 402 So.2d 320 (Miss. 1981).
Miss. Code Ann. § 15-1-41 was enacted on June 15, 1966. It was later amended in 1972, which version is appropriate for the case at bar and is reproduced below in its entirety. The statute was again amended in 1985 and most recently in 1986, both amendments not being applicable to the case at bar. The 1972 version reads as follows:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, *900 planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten (10) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.
This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
This limitation shall not apply to actions for wrongful death.
The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date.
Of extreme importance to this case, the constitutionality of § 15-1-41 was challenged in Anderson, supra. This Court held the statute constitutional.
Nevertheless, Fluor correctly asserts the following proposition:
This does not mean, however, that a particular phrase or sentence in the statute applied to one specific case cannot be held unconstitutional. If that is the case, the correct procedure is to rule the specific clause unconstitutional, while keeping the remainder of the statute intact. Quinn v. Branning, 404 So.2d 1018 (Miss. 1981); Wilson v. Jones County Board of Supervisors, 342 So.2d 1293 (Miss. 1977).
In short, Fluor would have this court rule that a portion of § 15-1-41, in particular the wrongful death exception, is unconstitutional.
By its own admission Fluor cannot find any direct authority supporting this assertion. This Court is under no obligation to consider this error without citation to authority. Clark v. State, 503 So.2d 277 (Miss. 1987); Kelly v. State, 463 So.2d 1070 (Miss. 1985); Redmond v. State, 457 So.2d 1344 (Miss. 1984). This Court, by independent research, also has not located any such authority and finds it is best to follow the trend of those majority states upholding the constitutionality of "statutes of repose," such as § 15-1-41. Anderson v. Wagner et al., supra.
For these reasons, Fluor's argument fails on this issue.

ISSUE # 2

WHETHER THIS CASE WAS BARRED BY § 15-1-41 IN 1968, BEFORE THE WRONGFUL DEATH EXCEPTION WAS ADDED?
To reiterate, the refinery was built by Fluor Corp. and accepted by Pontiac Eastern Corp. (Amerada Hess's predecessor in ownership) in 1958. § 15-1-41 was adopted in 1966. This original enactment did not contain the wrongful death exception now being disputed. In pertinent part, however, it stated that a builder such as Fluor could not be held liable for "any patent deficiency" in design or construction more than ten years after the written acceptance of such construction by the owner. Fluor argues, first, that the 1966 version is the proper statute to be applied in this case. Next, Fluor reasons the 1966 version should be given retroactive application citing to the following non-Mississippi authorities:
It is in fact permissible for a legislature to enact statutes of limitations which directly operate on prior existing causes of action and which have retroactive application, 51 Am.Jur.2d, "Limitation of Action" § 2738; See also, Bauld v. J.A. Jones Construction Co., 357 So.2d 401 (Fla. 1978) and Greenhalgh v. Payson City, 530 P.2d 799 (Utah 1975).
Finally, if this Court accepts this approach, Fluor claims, "the rest becomes easy"; apply the 1966 version; therefore, by the year 1968 (ten years after Pontiac Eastern accepted the plant from Fluor), all *901 claims were barred for "any patent deficiency" in the design or construction of the refinery by Fluor.
Appellee (Cook), on the other hand, contends that the 1972 version, supra, is the proper statute to apply. Appellee's rationale for her position is explained infra, but first a discussion of how Fluor refutes Appellee's position. The gravamen of Fluor's argument is to say that the lower court judge in referring to his holding that the 1972 version is the appropriate version to apply declined to give effect to the sentence in the 1972 statute which reads, "The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date." Therefore, under Fluor's theory, because appellee's claim had become time barred, then Article IV, § 97 of the Mississippi Constitution applies. Section 97 reads in full:
The Legislature shall have no power to revive any remedy which may have become barred by lapse of time, or by any statute of limitation of this state.
In short, Fluor contends that "[by] 1972 this case was over and had been over for four years. Our state constitution, § 97 prohibits resurrecting a case which is already barred."
Finally, should this court agree that the 1966 version is the applicable statute, Fluor points out that "what plaintiff is claiming as a defect was open, obvious, and apparent, and thus a patent deficiency precisely within the meaning of § 15-1-41."
In sum, Fluor insists that the lower court erred by not granting summary judgment for Fluor.
Of course, Appellee has a different interpretation which unsurprisingly supports the lower court's decision, in favor of Appellee, rejecting Fluor's request for summary judgment. In the words of the lower court judge, this "issue is considerably more complex" than the other issues Fluor asserts. We quote the trial court's reasoning in totidem verbis rather than attempt to paraphrase:
As this Court appreciates it, all claims beginning in 1966 for personal injury from a deficiency of design relative to real property expired ten years after the written acceptance of such construction by the owner or if the written acceptance had been prior to 1966, the ten years would begin running with the enactment of this new statute of limitation because this statute replaced statutes which allowed such claims to still be in effect. Therefore, it would not be until June 16, 1976 that any action under this statute would have run, even for any patent deficiency. The 1966 statute was replaced in 1972 with the wrongful death exemption before the June 16, 1976 expiration of any patent defects on wrongful death cases and therefore any claim for both latent and patent defects where there is a wrongful death are not covered under this statute. Since there is no period of limitations prescribed for wrongful death actions, then we must look to § 15-1-49 for our guidance on the limitation period. The applicable limitation period for this particular injury under this particular action for either latent or patent defects is six years after the death of Willie W. Cook, being the time this cause of action accrued.
This ruling is based upon the Court's understanding of the law in effect from 1958 through June 1966 being Section 722 of the Mississippi Code of 1942, which was identical to Section 15-1-49 of the 1972 Code. Since no injury had accrued to Willie W. Cook on June 15, 1966 the statute had not begun to run. The statute as applies to patent defects began to run on June 15, 1966 but was not to expire until June 16, 1976 and before it expired the wrongful death exemption came into effect, and on June 1, 1972, we reverted back to the six year statute of limitations under Section 15-1-49 even as to patent defects for Willie W. Cook.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment of defendant Fluor Corporation be and same is hereby overruled.
(Emphasis added.)
We conclude that the Circuit Court correctly analyzed the applicable Statutes of *902 Limitations and properly applied § 15-1-41 and § 15-1-49.
We add additional explanation. Fluor attempts to persuade this court to retroactively apply § 15-1-41 by enforcing the original 1966 version to the facts of this case. The following chronology is offered for a clearer understanding of the facts:
1958 Refinery accepted by Buyer
1966 § 15-1-41 enacted (applies only to `patent deficiencies')
1968 10 year statute of limitations ran for "wrongful death" (Appellant's argument)
1972 § 15-1-41 amended (excepts wrongful death which impliedly is governed by 6 year statute of limitation § 15-1-49; also broadened to "any deficiency")
1983 Accident which killed W.W. Cook and injured two others
In our view of this case, the fatal accident occurred in 1983. At that time, clearly the 1972 version of § 15-1-41 was in effect. Therefore, the 10 year statute of limitations as described in § 15-1-41 did not affect wrongful death actions. As a result § 15-1-49 kicks in as denoted by its clear language:
All actions for which no other period of limitation as prescribed shall be commenced within six years next after the cause of such action accrued, and not after.
Fluor's analysis to give retroactive application to the 1966 version of § 15-1-49 is not well received. It is settled in Mississippi "... that prospective operation only will prevail, unless a contrary intention is manifested by the clearest and most positive expression." Mladinich v. Kohn, 186 So.2d 481, 484 (Miss. 1966); Excelsior Mfg. Co. v. Keyser, 62 Miss. 155, 158 (1884); see also Kilgore v. Barnes, 508 So.2d 1042, 1044-45 (Miss. 1987). Fluor would have this court believe that the following language taken from the 1972 version was ignored by the lower court judge: "The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date." By doing so (Fluor contends and this court must assume that the 1966 version would apply thereby barring Appellee's claim as of 1976 at the latest), Fluor claims a revival of Appellee's cause of action thus a violation of Art. IV, § 97 of the Mississippi Constitution.
However, we conclude that Appellee's cause of action, in the first place, was never barred and in the second place, it follows there could be no revival of a cause of action that as a matter of law had never lapsed. Appellant's contention as to Issue # 2 is not well taken.

ISSUE # 3

WHETHER THE LOWER COURT ERRED IN FAILING TO DISMISS THIS SUIT WITH PREJUDICE, RATHER THAN WITHOUT PREJUDICE, DUE TO THE PLAINTIFF'S FAILURE TO TIMELY ANSWER INTERROGATORIES?
In brief, Fluor maintains that they served interrogatories on appellee on September 11, 1985 requiring appellee to reveal expert opinion and other specific allegations against Fluor. Same was not answered for over a year and eight months. Fluor was thereafter granted a motion excluding the testimony of an expert witness which Fluor claims was revealed for the first time in these late answers to interrogatories. Fluor screams foul, however, because a second ruling by the lower court granted a voluntary nonsuit without prejudice, thus, in Fluor's opinion wiping out the effect of the exclusion order and meaning that the case can be refiled and Fluor put to the expense of a second proceeding.
In support, Fluor's cites Williams v. Puryear, 515 So.2d 1231 (Miss. 1987) as "... this court's recent policy-announcing decision. There ..., the court emphasized that it is the policy of this state that interrogatories be answered timely so that cases may be expeditiously tried." Fluor emphasizes that in Williams v. Puryear the interrogatories were overdue some eight months. In this case they were overdue by nearly two years. Fluor was courteous *903 enough to remark that "in fairness to the lower court, the trial judge did not have the benefit of Williams v. Puryear" (Decided after the date of the lower court's order). However, there are a couple of more recent Mississippi cases which are critical to the issue of appropriate action for failure to comply with discovery.
The most recent case on point is Hapgood v. Biloxi Regional Medical Center, 540 So.2d 630 (Miss. 1989). There, this Court stated as follows:
Under certain circumstances, this Court has held that dismissal of a cause of action for failure to comply with discovery is appropriate, Williams v. Puryear, 515 So.2d 1231 (Miss. 1987); however, this Court has also held under certain circumstances, that dismissal for failure to comply with discovery was not proper. White v. White, 509 So.2d 205, 209-210 (Miss. 1987). Although trial courts are authorized to dismiss cases when such action is justified, their reason for doing so must always be examined by an appellate court.

Any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play, but the reason for the failure is an important consideration in determining what sanction to impose. If the failure is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, unless severe sanctions are the most that can be invoked.

8 C. Wright and A. Miller, Federal Practice and Procedure, § 2284 (1970).
Hapgood, at 634. (Emphasis added)
In both Hapgood and White, supra, the trial courts had dismissed appellants claims for failure to comply with discovery. On appeal, however, this Supreme Court reversed and remanded these decisions, relying on the rationale best stated in Hapgood, supra: "In summation, although the appellant does not appear to be without blame in this case, there also appears to have been some justification for her failure to comply with discovery in a timely manner." Id, at 635.
Appellee justifies her failure to timely comply with discovery on page 8 of her brief as follows:
Fluor would have this Court believe that the Plaintiff and her attorneys disobeyed Court orders and flagrantly disregarded its discovery requests. Once again, Fluor has failed to be honest with this Court and has intentionally failed to "tell the rest of the story". Mr. McAninch was employed and Appellee's intent to use Mr. McAninch was revealed on January 19, 1987. As clearly stated in the "Notice of Expert Witness" the Plaintiff did not have information from Mr. McAninch in which to respond to Fluor's discovery requests.
Appellee adds, "As evidenced to the trial court below and restated here for this Court's benefit, Appellee timely requested opinions from her disclosed experts and revealed the opinions through answers to discovery from the Defendants as soon as the information was known to her."
In sum, it appears Appellee's failure to comply was because of inability to comply, rather than because of willfulness, bad faith, or any fault of appellee, thus making the action discretionarily dismissible without prejudice.
In reviewing the Order of Dismissal Without Prejudice as to Fluor Corporation, we note that the trial court judge considered the entire file of this matter and the progress of all developments in the case, and determined that the plaintiff's motion for dismissal as to Fluor Corporation should be granted without prejudice, subject to the following conditions:
(1) All costs of this action are taxed against plaintiff, for which execution or other proper process may issue;
(2) If the action should be refiled against Fluor Corporation, then the plaintiff shall be limited in her theories of recovery, the bases for those theories, and the evidentiary facts supporting such theories, to those theories, bases, and facts disclosed in the plaintiff's answers to interrogatories *904 of Fluor which have been filed in this cause prior to the date of this order and shall not be permitted to introduce any new theories or evidentiary facts supporting such theories;
(3) If the action should be refiled against Fluor Corporation, the court in which such action may be refiled should award to Fluor, the reasonable amount of cost and expense which will have to be a duplication by Fluor in any refiled action, including attorney's fees and expert witnesses' fees, which have already been incurred by Fluor Corporation in this action.
These conditions certainly favor Fluor and negate its argument that the case can be refiled, with Fluor put to the expense of a second proceeding, and thereby wipe out the effect of the exclusion order. Indeed, it is possible  given these sanctions  that plaintiff will not refile her claim. However, even if plaintiff does refile, Fluor is in no worse position than it was prior to the lower court's granting of a non-suit without prejudice. On the contrary, Fluor stands in a better position as a result of plaintiff being required to pay any of Fluor's duplication costs associated with a new trial.
This Court held in Celotex Corp. v. J.B. Womack Construction Co., 455 So.2d 1314 (Miss. 1984), that "[i]f the dismissal leaves defendant in the same position that he would have stood if the suit had not been instituted, then the right to dismiss is unimpaired until final submission to the Chancellor on the merits." See also Griffith, Miss. Chancery Practice, § 534 (2d Ed. 1950), and Northern v. Scruggs, 118 Miss. 353, 79 So. 227 (1918). We concluded that an order of non-suit did not constitute a final order from which an appeal could be perfected. Thus, we are faced with a situation similar to that in Celotex. Fluor has not received a final adverse verdict or judgment, but rather has been denied a summary judgment to dismiss upon one of its defenses based upon the Court's findings as set forth in the record. Finding the non-suit without prejudice is within the discretion of the learned trial judge under the totality of the circumstances and conditions of the order, if an attempt is made by appellee to re-file, we think this appeal is premature. See Celotex, supra at 1316, where we stated, "[t]he non-suit order did not constitute the final order from which an appeal may be perfected." Therefore, this appeal is without merit and dismissed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.